**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

A.L. and V.R., on behalf of E.L.,

                               Plaintiffs,

                - against -                    **COMPLAINT**

New York City Department of Education,        **08 CV 2023 (JMM)**

                             Defendant.

----------------------------------------------------------------

Plaintiffs, A.L. and V.R., on behalf of E.L., by their attorneys, Mayerson & Associates, as and for their Complaint, allege and states the following:

1. Plaintiff E.L., the daughter of plaintiffs A.L. and V.R., is a minor child who has been diagnosed with a serious autism spectrum disorder. E.L. was at all relevant times was and is a student residing within the New York City School District entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400, *et. seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education law and Part 200 of the Commissioner's Regulations.

2. Plaintiffs A.L. and V.R. are the parents of E.L. Plaintiffs are residents of the State of New York, residing at all relevant times at an address, in Manhattan, within the New York City School District.

3. E.L. and her parents A.L. and V.R. are not expressly named herein by their given names or specific address because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99.

4.  Defendant New York City Department of Education ("NYCDOE"), upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the agency charged with the obligations to provide E.L. with a free and appropriate public education ("FAPE"), *see infra*, ¶ 8.

### THE RELIEF BEING SOUGHT

5.  This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et. seq.*, more commonly known as the IDEIA and, in particular, 20 U.S.C. §§ 1415(i)(2) and (3).  *See also*, 34 C.F.R. §§ 300.516 and 300.517.

6.  This action is being brought to secure statutory attorneys' fees that plaintiffs are entitled to recover pursuant to the fee-shifting provisions of the federal IDEIA statute, 20 U.S.C. §§ 1415(i)(3)(A)-(G).  A.L. and V.R., on behalf of E.L. should be awarded attorneys' fees as the "substantially prevailing party" in a due process hearing for the 2004-2005, 2005-2006 and 2006-2007 school years under New York City Impartial Hearing Office Case Numbers 59066, 101543 and 107427, respectively.

### JURISDICTION AND VENUE

7.  This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the amount in controversy.  Venue is proper in that plaintiff and defendant both reside in or are situated in this District.

8.  Pursuant to the IDEIA statute, as well as the New York State Education Law, all school agencies within the State are required to offer eligible students with disabilities special education programs and services that are tailored to meet the individual needs of each child with a

disability.  The FAPE required under IDEIA will be different for each child, as IDEIA does not accept a "one size fits all" approach.

### FACTUAL BACKGROUND FOR THE 2004-2005 SCHOOL YEAR

9.  On or about April 21, 2005, A.L. and V.R., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2004-2005 school year for the cost and expenses of E.L.'s tuition and related services.  E.L.'s parents filed for due process due to the NYCDOE's failure to recommend and provide an appropriate placement and program individualized for E.L.'s specialized needs.

10. The evidentiary hearing on this matter took place on June 17, 2005.  Eric Nachman, Esq., of Mayerson & Associates represented the plaintiff.  The NYCDOE conceded they did not provide E.L. with an appropriate program, thereby sustaining (in plaintiffs' favor) Prong I of the Burlington/Carter test for relief.[1]

11. The impartial hearing officer heard testimony from E.L.'s witnesses regarding the appropriateness of the services provided by private providers secured by E.L.'s parents.  The NYCDOE did not offer any testimony, documentary evidence, or argument challenging the appropriateness of the program privately arranged by E.L.'s parents.

12. By "Findings of Fact and Decision" dated July 11, 2005, Impartial Hearing Officer Rachel Potasznik, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in the administrative due process proceeding.[2]  Defendant never

---

[1] Reference is made to School Committee of Burlington v. Dept. of Educ. of Massachusetts, 471 U.S. 359, 105 S.Ct. 1996 (1985), and Florence Court School Dist. Four v. Carter, 510 U.S. 7, 114 S.Ct. 361 (1993), which set the standards for determining whether a handicapped child's unilateral educational placement is eligible for reimbursement relief.

[2] A redacted copy of this decision is annexed hereto as Exhibit A.  Please note that all exhibits have been redacted so as to protect the privacy of the family.  See ¶ 3.

appealed from this decision, which thus became final and non-appealable on or about August 16, 2005.

**FACTUAL BACKGROUND FOR THE 2005-2006 SCHOOL YEAR**

13. On or about September 2, 2005, and amended September 7, 2005, A.L. and V.R., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2005-2006 school year for the cost and expenses of E.L.'s tuition and related services. E.L.'s parents filed for due process due to the NYCDOE's failure to recommend and provide an appropriate placement and program individualized for E.L.'s specialized needs.

14. The evidentiary hearing on this matter took place on June 8, 2006 and July 7, 2006. Randi M. Rothberg, Esq., of Mayerson & Associates represented the plaintiff. The NYCDOE conceded Prong I of the <u>Burlington</u>/<u>Carter</u> test for relief.[3] However, the NYCDOE challenged the appropriateness of E.L.'s home-based program (Prong II) and did not concede Prong III. Plaintiffs bore the burden of proof in regards to the appropriateness of the services provided to E.L.

15. The impartial hearing officer heard testimony from E.L.'s witnesses regarding the appropriateness of the services provided by private providers secured by E.L.'s parents. The NYCDOE did not offer any testimony, documentary evidence, or argument challenging the appropriateness of the program privately arranged by E.L.'s parents.

16. By "Findings of Fact and Decision" date August 3, 2006, Impartial Hearing Officer Howard Jacob, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the

---

[3] Reference is made to <u>School Committee of Burlington v. Dept. of Educ. of Massachusetts</u>, 471 U.S. 359, 105 S.Ct. 1996 (1985), and <u>Florence Court School Dist. Four v. Carter</u>, 510 U.S. 7, 114 S.Ct. 361 (1993), which set the standards for determining whether a handicapped child's unilateral educational placement is eligible for reimbursement relief.

substantially prevailing party in this administrative due process proceeding.[4]  Defendant never

appealed from this decision, which thus became final and non-appealable on or about September

7, 2006.

### FACTUAL BACKGROUND FOR THE 2006-2007 SCHOOL YEAR

17. On or about October 6, 2006, A.L. and V.R., through their attorneys, Mayerson &

Associates, filed for an impartial hearing at the administrative level in an effort to secure

reimbursement and other relief relating to the 2006-2007 school year for the cost and expenses of

E.L.'s program and services.  E.L.'s parents filed for due process due to the NYCDOE's failure

to recommend and provide an appropriate placement and program individualized for E.L.'s

specialized needs.

18. The evidentiary hearing on this matter took place on November 2 and December 12,

2006, and January 17, January 26, and February 8, 2007.  Randi M. Rothberg, Esq. of Mayerson

& Associates represented the plaintiffs.  The NYCDOE contended that it had provided E.L. with

the appropriate education program, satisfying Prong I of the Burlington/Carter test.  Plaintiffs

bore the burden of proof in regards to the appropriateness of the services provided to E.L.

19. The impartial hearing officer heard testimony from E.L.'s witnesses regarding the

appropriateness of the services provided by private providers secured by E.L.'s parents.  The

NYCDOE did not offer any testimony or documentary evidence regarding the claims raised by

E.L.'s parents.

20. By "Findings of Fact and Decision" dated April 17, 2007, Impartial Hearing Officer

Mindy G. Wolman, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the

substantially prevailing party in this administrative due process proceeding.[5]  Defendant never

---

[4] A redacted copy of this decision is annexed hereto as Exhibit B.
[5] A redacted copy of the decision has been annexed hereto as Exhibit C.

appealed from this underlying administrative decision, which thus became final and non-appealable on or about May 22, 2007.

CONCLUSION

21. The defendant is liable to pay plaintiffs their reasonable attorneys' fees arising out of E.L.'s successive IDEIA administrative due process proceedings, and in this action.  The fees requested herein are entirely reasonable and appropriate because:

(a) upon information and belief, plaintiffs' attorneys' office is the only firm in the country whose practice is devoted almost exclusively to representing children and adolescents with autism spectrum disorders, like E.L., in educational rights disputes;

(b) the principal of plaintiffs' attorneys' firm has testified before the United States Congress on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(c) plaintiffs' attorneys have published and presented on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(d) plaintiffs' attorneys have special knowledge and expertise concerning the educational needs of children diagnosed with autism spectrum disorders;

(e) plaintiffs' attorneys' office has represented children with autism spectrum disorders in numerous states across the nation, and has consulted to families outside of the United States; and

(f)  to the extent that there is a "prevailing rate" in the Southern District of New York for sophisticated autism intervention cases, plaintiffs' attorneys' prevailing rates are reasonable and within the applicable standard.

22. Necessary duties involved with preparing E.L.'s cases for administrative due process hearings for the 2006-2007 and 2007-2008 school years included, but were not limited to: (a) corresponding with plaintiff and E.L.'s service providers; (b) holding numerous telephone conferences; (c) writing and filing impartial due process hearing requests; (d) reviewing and disclosing documentary information relevant to E.L.'s claims; (e) scheduling and preparing witnesses to testify at the hearings; and (f) developing effective case presentations for the 2004-2005, 2005-2006, and 2006-2007 school years.

23. For all of the above efforts, plaintiffs should be awarded attorneys' fees, related costs and disbursements for the 2004-2005, 2005-2006 and 2006-2007 school years in an amount to be set by this Court, at plaintiffs' counsel's prevailing rates.

PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, this Court should (a) fix and award plaintiffs their statutory attorneys' fees and related costs and disbursements from the IDEIA due process proceedings for the 2004-2005, 2005-2006, and 2006-2007 school years in an amount to be set by the Court, at plaintiffs' counsel's prevailing rates, (b) award plaintiffs the attorneys' fees and related costs and disbursements associated with this action in an amount to be set by the Court, and (c) award plaintiffs such other, different and further relief as this Court deems proper.

Dated: February 29, 2008
    New York, New York

Gary S. Mayerson (GSM 8413)
Mayerson & Associates
330 West 38th Street, Suite 600
New York, New York 10018
(212) 265-7200
(212) 265-1735 (facsimile)
mauricio@mayerslaw.com

## FINDINGS OF FACT AND DECISION

Case Number:                          59066

NYS Case Identifier Number:   14239

Student's Name:                      █████ █████

Date of Birth:                          July 11, 1996

District:                                   2

Hearing Requested By:             Parent

Date of Hearing:                       June 17, 2005

Hearing Officer:                        Rachel Potasznik, Esq.

Hearing Officer's Findings of Fact and Decision                                    1

Case No.  59066

---

<u>NAMES AND TITLES OF PERSONS WHO APPEARED</u>

| | | |
|---|---|---|
| ██████ | Mother | Parent |
| ██████ | Father | Parent |
| Eric Nachman | Attorney | Parent |
| Patrick Murano | ABA Therapist | Parent |
| Kathleen Deane | Chairperson Designee, CSE, District 2 | Department of Education |

On June 17, 2005 a hearing was held before the undersigned in the matter of █████ L. pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C., §1415 (f)(3). The hearing was held to determine the appropriate placement and prospective reimbursement and related services for the student pursuant to the request made by the parent for an impartial hearing. The Impartial Hearing Office received the parent's request on April 21, 2005. The undersigned was assigned to the matter on April 27, 2005. The hearing was scheduled for June 1, 2005 and adjourned on consent of the parties to June 17, 2005.  The compliance date was extended at the request of the parties to July 17, 2005.  Appended to the record are lists of persons in attendance and of documents submitted into evidence.

## BACKGROUND

█████ is an 8.11 year old male classified as autistic and enrolled at the McCarton School, a private school specializing in children with autism. He receives individual speech/language therapy five times per week for 60 minutes.  █████ is receiving twenty hours a week of individual Applied Behavioral Analysis (ABA) services in the home after school.  █████ is performing at the level of a 4 year old.

## DISTRICT'S POSITION

Kathleen Deane represented the District.   Ms. Deane stated that the District concedes that there was no timely placement for the student, that the student requires transportation to and from school as indicated in the Individualized Education Program (IEP).   The last IEP was developed May 28, 2004 and it recommended a special class in a specialized school beginning September 2004 in a 12 month program with

---

recommended services of occupational therapy, speech and language therapy and

counseling.  [Exh.14]

## PARENT'S POSITION

Eric Nachman, an attorney represented the parents.  Mr. Nachman requested that

the District provide tuition reimbursement for the McCarton School for the 2004/2005

school year and for the 20 hours a week of ABA services which has been provided by the

parent as the District failed to provide placement and services in a timely manner.  The

request is for services and tuition from September 2004 through August 31, 2005.  The

cost of tuition is $70,00.00 per year. Transportation is also requested. Due to financial

constraints the parent is requesting prospective reimbursement.

Witnesses for the parent included Patrick Murano the ABA service provider and

V██████R., the mother.  Their testimony described the ABA services that were being

provided and how they were necessary for E██to generalize what was learned in school

to the home and for him to learn to structure time and daily living skills.  They described

the progress he has made in math, reading, language and daily living skills.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Department of Education bears the burden of demonstrating the

appropriateness of the program recommended by its CSE.  (Matter of Handicapped

Child, 22 Ed. Dept. Rep. 487; State Review Officer's Decision, Appeal No. 92-7; State

Review Officer's Decision, Appeal No. 93-9)  To meet its burden, the Department of

Education must show that the recommended program is reasonably calculated to allow

the child to receive educational benefits (Board of Education Hendrick Hudson CSD v.

Rowley, 458 U.S. 176 [1982]), and the recommended program is the least restrictive

environment for the child.  (34 CFR Sec. 300.550[b]; 8 NYCRR Sec 200.6 [a] [1]).  An

appropriate program begins with an IEP which accurately reflects the results of

evaluations to identify the child's needs, establishes annual goals and short-term

Hearing Officer's Findings of Fact and Decision                                    4

Case No.  59066

---

instructional objectives that are related to the child's educational deficits, and provides for the use of appropriate special education services to address the child's special education needs (<u>Application of a Child with a Disability</u>, Appeal No. 93-12; <u>Application of a Child with a Disability</u>, Appeal No. 93-9).

The parent claimed and the District conceded that the District failed to provide a placement in a timely manner so the parent enrolled the student in an appropriate private school, the McCarton School.  The parent presented evidence that ██ required 20 hours of ABA services based on the reports and evaluations done by the McCarton School and that ██ has made substantial progress due to the services provided.  The District did not rebut this claim or any of the evidence presented in support of the claim for ABA services 20 hours a week.

The Department of Education may be required to pay for educational services obtained for a student by his or her parent, if the services offered by the Department of Education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations support the parent's claim (<u>School Committee of Burlington v. Department of Education of Massachusetts</u>, 471 U.S. 359 [1985]). The parent's failure to select a program approved by the state in favor of an unapproved option is not itself a bar to reimbursement (<u>Florence County School Dist Four v. Carter</u>, 510 U.S. 7 [1993]). A Department of Education has the burden of demonstrating the appropriateness of the educational program that it offered to provide to a student (<u>Application of a Child Suspected of Having a Disability</u>, Appeal No. 93-9; <u>Application of a Child with a Handicapping Condition</u>, Appeal No. 92-7; <u>Application of a Handicapped Child</u>, 22 Ed Dept Rep 487 [1983]).

To meet its burden of showing that it had offered to a provide a free appropriate public education (FAPE) to a student, the Department of Education must show that it complied with the procedural requirements set forth in the IDEA, and that the IEP developed by the Committee on Special Education through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (<u>Board of Education v Rowley</u>, 458 U.S. 176, 206,207 [1982]). The student's recommended

program must also be provided in the least restrictive environment (34 C.F.R. § 300.550[b]; 8 NYCRR 200.6[a][1]).

Based on the evidence presented, it is clear that the Department of Education failed prong one of the Carter test in that it failed to provide a placement to the parent in a timely manner.  The parent sustained its burden by presenting extensive undisputed evidence that its chosen placement in the McCarton School was appropriate to the needs of the child and that in addition the child required ABA and related services and that the child was making progress with the services being provided.  There was undisputed evidence of the parents cooperation with the Department of Education, therefore the parent satisfied prongs two and three of the Carter test.  In addition, testimony was presented that the parents were unable to afford to pay the tuition of $70,000.00 per year at the McCarton School due to financial constraints and thus prospective payment for the 2004/20005 school year is warranted pursuant to the Connors decision. Based on all of the evidence presented, I find that the parent sustained its burden in proving that the unilateral placement in the McCarton School and the provision of 20 hours of ABA services in the home were warranted.

Accordingly, the following is ORDERED:

**ORDER**

1. The District shall provide reimbursement to the parent for tuition at the McCarton School for the 2004/2005 school year in the amount of $70,000.00. Reimbursement shall be made upon proof of invoices from the school.

2. The District shall provide prospective tuition reimbursement if needed through August 31, 2005.

3. The District shall provide transport to and from the McCarton School for the 2004/2005 school year.

4. The District shall provide reimbursement for up to 20 hours of individual ABA services after school for the 2004/2005 school year through August 31, 2005. Services to be provided at a rate of no more than $50.00 per hour for Patrick Murano, Jeff Jardine at no more than $30.00 per hour and Jill Dandridge at no more than $35.00 per hour.

Hearing Officer's Findings of Fact and Decision                                    6

Case No. 59066

_____

   5.   The District shall reconvene the CSE to find an appropriate placement for the
        student for the 2005/2006 school year.

So ordered.

Dated: July 11, 2005

                                              _____
                                              RACHEL POTASZNIK, ESQ.
                                              Impartial Hearing Officer

RP:ds

**<u>PLEASE TAKE NOTICE</u>**

        **Within 35 days of the date of this decision, the parent and/or the New York
City Department of Education has a right to appeal the decision to the State Review
Officer of the New York State Education Department under Section 4404 of the
Education Law and the Individuals with Disabilities Education Act.**

        **"The notice of intention to seek review shall be served upon the school
district not less than 10 days before service of a copy of the petition for review upon
such school district, and within 25 days from the date of the decision sought to be
reviewed.  The petition for review shall be served upon the school district within 35
days from the date of the decision sought to be reviewed.  If the decision has been
served by mail upon petitioner, the date of mailing and the four days subsequent
thereto shall be excluded in computing the 25- or 35-day period."
(8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver
of the right to appeal this decision.**

        **Directions and sample forms for filing an appeal are included with this
decision.  Directions and forms can also be found in the Office of State Review
website:  <u>www.sro.nysed.gov/appeals.htm.</u>**

Hearing Officer's Findings of Fact and Decision                                    7

Case No.  59066

---

## \DOCUMENTATION ENTERED INTO RECORD

| | | |
|---|---|---|
| 1. | Individualized Education Program (IEP), McCarton, 9/4 & 8/5, 15pp. | Parent |
| 2. | Speech and Language Goals, McCarton, 9/4 & 8/5, 8pp. | Parent |
| 3. | Educational Progress Report, 5/4/04, 3 pp | Parent |
| 4. | Occupational Therapy Progress Report 5/24/05, 3 pp | Parent |
| 5. | Speech and Language Progress Report | Parent |
| 6. | McCarton Enrollment Contract, 7/19/04, 2 pp | Parent |
| 7. | Letter L██████R██ to CSE, 9/9/94, 1p | Parent |
| 8. | Progress Note, 1/25/05, 2 pp | Parent |
| 9. | Educational Progress Report 1/25/05, 9 pp | Parent |
| 10. | Occupational Therapy Progress Report, 2/7/05 | Parent |
| 11. | Individualized Education Program (IEP), New York City Department of Education, 2/11/05, 13 pp. | Parent |
| 12. | Request for Due Process, 4/21/05, 3pp. | Parent |
| 13. | Home Therapy Schedule, 9/4 & 8/5, 1 p. | Parent |
| 14. | Cover Sheet of 5/28/94 Individualized Education Program, 1 p | Parent |

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 101543 |
| Student's Name: | E███ L███ |
| Date of Birth: | July 11, 1996 |
| District: | 2 |
| Hearing Requested By: | Parent |
| Date of Hearing: | June 8, 2006<br>July 7, 2006 |
| Hearing Officer: | Howard Jacob, Esq. |

Case No.  101543

## NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 8, 2006

| Randi Rothberg | Attorney, Mayerson and Associates | Parent |
| ██████ R██ | Mother | |
| A██ I████ | Father | |
| Nicole Pierce | Chairperson Designee, CSE, District 2 | Department of Education |
| Bobbie Edward | Teacher, McCarton School | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED JULY 7, 2006

| Randi Rothberg | Attorney, Mayerson and Associates | Parent |
| ██████ R██ | Mother | |
| I██████ | | |
| A██ I████ | Father | |
| Pat Murano (via telephone) | ABA Therapist | Parent |
| Nicole Pierce | Chairperson Designee, CSE, District 2 | Department of Education |

Case No. 101543

The hearings on this matter took place on June 8, 2006 and July 7, 2006 pursuant to the Individuals with Disabilities Education Act, (IDEA), 20 U.S.C. Section 1415(f)(3) regarding the educational program for ██ L. The hearings were held at the Department of Education, 131 Livingston Street, Brooklyn, New York. The lists of the witnesses and the documents received into evidence are attached to this decision.

## BACKGROUND

The parents initiated this proceeding to obtain tuition reimbursement for the McCarton School for the 2005-2006 school year. In addition, the Parents are seeking reimbursement for twenty hours a week of home Applied Behavioral Analysis (ABA) therapy.

## THE DEPARTMENT OF EDUCATION'S POSITION

At the outset, the representative for the Department of Education indicated that the Department was not contesting the placement of ██ L. at the McCarton School. The only issue that remained to be determined at the hearing was the appropriateness of the home ABA therapy. No documentary evidence was offered, nor were any witnesses called on behalf of the Department of Education. The representative for the Department of Education took issue with the necessity of the after school home program by way of cross-examination of the Parent's witnesses.

## THE PARENT'S POSITION

The first witness on behalf of the Parents was Bobbie Edwards, a teacher at the McCarton School. She is a board certified behavioral analyst and she has seven years of experience working with autistic children. She is responsible for overseeing the home program for ██ L. She supervises Pat Murano and Alexandra Albert, the two home therapists who work with ██. She is responsible for maintaining a book, which records ██ progress. She picks up data sheets generated by the home therapists when she goes to the L████s home, and the data is then converted into graphs. Ms. Edwards talked about the fact that her role includes creating a link between the home program and the school program. In order to fulfill that role, she acts as a communications conduit between the teachers and therapists who work with ██ at the school and the home therapists. There are weekly meetings at the school with the teachers and the school therapists, and the results are communicated to the home therapists. Ms. Edwards also has monthly meetings with the two home therapists in order to coordinate the school program and the home program. There is an ongoing effort to figure out how to modify

Case No.  101543

and change the program so that ██ interest is stimulated, because his attention span is a huge obstacle to learning.  His language problems (receptive and expressive delays) and his ritualistic behaviors add to the difficulties in making progress.  Ms. Edwards testified that it is important to carry over skill development from the school to the home so that the skills are evident in both domains, which is a sign of progress.  She testified that during the 2005-2006 school year, there has been progress across the board in various skill areas.  It is the opinion of Ms. Edwards that it is essential for ██ to have home therapy to reinforce the program from the school.  Ms. Edwards stated that it was necessary to work on the behavior and attention issues in both domains to help him make progress.  Ms. Edwards goes to the ███ home once a week to provide two hours of ABA therapy, which also gives her an opportunity to assess the situation.

On cross-examination, Ms. Edwards indicated that a formal functional behavioral assessment was not done.  She indicated that this type of assessment is not necessary in every case.  She stated there is a joint group effort at the school to identify the specific behavioral problems and what strategies should be used to address those problems.  It is essentially a clinical approach without formal testing.

The next witness was Pat Murano, who is a home ABA therapist.  He has been working with autistic children for approximately ten years in school and home programs.  He has been the home therapist for ██ for the past two and a half years.  It is his opinion that the one-to-one therapy is the most effective way to achieve growth and advancement for ██.  With respect to the 2005-2006 school year, the focus has been on academic delays in reading and mathematics, as well as the behavioral problems of impulsivity and rigidity.  The work of the home therapist is coordinated with the school program.  As to the need for home therapy, Mr. Murano testified that when a child like ██ has free time that is not structured, he regresses to self-stimulating behaviors such as hand flapping and tensing.  Without structure, most of the free time would be spent practicing these behaviors.  There are team meetings and e-mail communication to coordinate what is going on in the school with what is being done at home.  In addition to the work being done in the home, there are also excursions out into the community, so as to develop other skills.  Mr. Murano takes ██ to soccer programs and swimming programs with other special needs children.

Case No. 101543

He explained the concept of generalization which is the carryover of a skill developed in the school setting to another setting, such as the home. During this past school year, ███ has improved his conversational skills and there has been diminishment of his self-stimulatory behaviors such as hand flapping and tensing.

The purpose of the team meetings is to develop strategies and to make sure that everyone is on the same page so that there is a unified approach to helping ███. Mr. Murano testified as to the involvement of ███ parents; however, he indicated that the parents could not provide this therapy on their own. In addition, he testified that if ███ only had the school program, there would be no carryover to the home and to the community.

Mr. Murano indicated on cross-examination there was no formal functional behavioral assessment of ███ ███ is evaluated through the observations of his teachers and the therapists. The home therapy sessions are approximately three to four hours and they take place after school between 3:00 p.m. and 6:00 p.m. The team meetings take place twice a month. Mr. Murano was asked about the concept of behavioral modification being most effective when there is an emotional connection to the person (such as the parent), who is trying to modify the behavior. Mr. Murano answered that often the parent is so immersed in the problem on a daily basis that it is necessary to have a perspective outside of the parent's perspective and that an intervention from outside the family can be the best way of helping the child.

The next witness was V███ R., the mother of ███. She testified as to her son's history and she indicated that he has gone from less restrictive environments to the most restrictive environments, and the most restrictive environments have yielded the best results in helping him advance. She testified that the home ABA program, which provides a structure at home, is essential to supplement the structure that ███ has in school. Without this structure, his self-stimulatory behaviors takeover. Both she and her husband work and they are not at home when ███ returns from his school day. When there was a period when one of the home therapists was not available, there was a clear regression, as ███ was drawn into his world of rigidity, obsessions and ritualistic behavior. She testified that the therapists have helped her to deal with these behaviors, and without them she would be at a loss as to what to do. She speaks with Bobbie Edwards everyday and with the home therapists. There has been progress

Case No. 101543

during this past school year in his conversational skills, his attention span, and his general behavior.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

As to the claim for tuition reimbursement for the McCarton School, the Department of Education conceded that a Free Appropriate Public Education (FAPE) had not been provided, that the McCarton School was an appropriate educational environment, and that the Parents have been cooperative with the Committee on Special Education (CSE). Therefore, I find that the Parents are entitled to tuition reimbursement for the 2005-2006 school year upon submission of the appropriate documentation.

As to the home ABA program, I am persuaded by the testimony of the witnesses that the program is essential to supplement the school program. Therefore, I find that the Parents are entitled to reimbursement for twenty hours a week for the home ABA program during this school year and extending through this summer up to the end of August, 2006.

## ORDER

It is ordered that the Department of Education reimburse the Parent for the tuition at the McCarton School and for the home ABA program upon submission of the appropriate documentation.

Dated: August 3, 2006

HOWARD JACOB, ESQ.
Impartial Hearing Officer

HJ:nn

## PLEASE SEE FOLLOWING PAGE FOR APPEAL NOTICE

Case No. 101543

## PLEASE TAKE NOTICE

**Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

**"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.**

**Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.**

Case No. 101543

## DOCUMENTATION ENTERED INTO THE RECORD JUNE 8, 2006

A.  Amended demand for due process, 9/2/05 and 9/7/05, 4 pp.          Parent
B.  Progress report by Patrick Murano, 11/29/05, 2 pp.               Parent
C.  Educational progress report by Bobbie Edwards, 11/11/05, 2 pp.   Parent
D.  Speech and language progress report, 11/9/05, 5 pp.              Parent
E.  Attendance sheet, 9/6/05, 1p.                                    Parent
F.  Parent's letter to CSE chairperson, 8/29/05, 1 p.               Parent
G.  Final notice of recommendation, 8/12/05, 1p.                     Parent
H.  Letter from ABA home therapist, 8/8/05, 1 p.                    Parent
I.  Final notice of recommendation, 7/21/05, 1 p.                   Parent
J.  Post-decision notification, 7/19/05, 1 p.                       Parent
K.  Enrollment contract, 6/22/05, 2 pp.                             Parent
L.  Occupational therapy progress report, 6/20/05, 7 pp.           Parent
M.  Speech and language progress report, 6/7/05, 3 pp.              Parent
N.  Notice of recommended deferred placement, 2/22/05, 1 p.        Parent
O.  Occupational therapy progress report, 2/7/05, 5 pp.            Parent
P.  IEP, 2/11/05, 13 pp.                                            Parent
Q.  Educational progress report, 1/28/05, 3 pp.                    Parent
R.  McCarton School progress note, 1/25/05, 2 pp.                  Parent
S.  Home therapy weekly schedule, 2005-2006, 1 p.                  Parent
T.  McCarton School IEP, 2005-2006, 17 pp.                         Parent
U.  Basic language and learning skills assessment, 2005-2006, 3 pp.  Parent
V.  Invoices and cancelled checks, 2005-2006, 25 pp.              Parent
W.  Observation, 11/18/05, 2 pp.                                   Parent
X.  Invoices and cancelled checks, 2005-2006, 23 pp.             Parent
Y.  Resume of Bobbie Edwards, 4 pp.                                Parent
Z.  Occupational therapy progress report, 1/11/06, 7 pp.          Parent

AA.  Speech and language progress report, 1/06, 5 pp                Parent
BB.  Home ABA program data records, 2005-2006, 59 pp.             Parent


## DOCUMENTATION ENTERED INTO THE RECORD JULY 7, 2006

DD.  Home Program Data Sheets for █████, 2005-2006          Parent
     School Year, 59 pp.

FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case No. | 107427 |
| SED ID No. | 23064 |
| Student's Name: | █████ |
| Date of Birth: | July 11, 1996 |
| District: | 7 |
| Hearing Requested by: | Parents |
| Dates of Hearings: | November 2, 2006 |
| | December 12, 2006 |
| | January 17, 2007 |
| | January 26, 2007 |
| | February 8, 2007 |
| Record Close Date: | March 30, 2007 |
| Hearing Officer: | Mindy G. Wolman, Esq. |

Findings of Fact and Decision                                                                       1
Case No. 107427

**NAMES AND TITLES OF PERSONS WHO APPEARED ON NOVEMBER 2, 2006**

| | | |
|---|---|---|
| Randi M. Rothberg, Esq. | Attorney | Parents |
| Hillary S. Steuer, Esq. | Attorney | Department of Education |
| Vida Alvy, Esq. | Attorney | Department of Education |

**NAMES AND TITLES OF PERSONS WHO APPEARED ON DECEMBER 12, 2006**

| | | |
|---|---|---|
| A█████ L█████ | Father | |
| V████ R███ | Mother | |
| Randi M. Rothberg, Esq. | Attorney | Parents |
| Hillary S. Steuer, Esq. | Attorney | Department of Education |
| Emily Jordan, Esq. | Attorney | Department of Education |
| Dr. Dewey Aleem* (ByTelephone) | School Psychologist | Department of Education |
| Dania Cheddy* (By Telephone) | Principal of P.S. 226 | Department of Education |
| Bonnie McCort* (By Telephone) | Teacher | Department of Education |

**NAMES AND TITLES OF PERSONS WHO APPEARED ON JANUARY 17, 2007**

| | | |
|---|---|---|
| A█████ L█████ | Father | |
| V████ R███ | Mother | |
| Randi M. Rothberg, Esq. | Attorney | Parents |
| Hillary S. Steuer, Esq. | Attorney | Department of Education |
| Bonnie McCort* (By Telephone) | Teacher | Department of Education |
| Ivy Feldman* (By Telephone) | Educational Director, McCarton School | Parents |
| Tracey Fisher* (By Telephone) | Occupational Therapist | Parents |
| Joseph T. Pierce* (By Telephone) | Teacher | Parents |

*Individuals who gave testimony.

Findings of Fact and Decision                                                2
Case No. 107427
_____

**NAMES AND TITLES OF PERSONS WHO APPEARED ON JANUARY 26, 2007**

A▮▮▮I▮▮▮▮                    Father
V▮▮▮R▮▮                      Mother
Randi M. Rothberg, Esq.      Attorney                    Parents
Hillary S. Steuer, Esq.      Attorney                    Department of Education
Patrick Murano*              Home ABA Therapist          Parents
  (By Telephone)
Chigusa Weekley*             Home-School Coordinator     Parents
  (By Telephone)        McCarton School
Sally Seidenfrau*            Speech-Language Supervisor, Parents
  (By Telephone)        McCarton School
Carole Fiorile*              Observer,                   Parents
                             Board Certified Behavior Analyst

**NAMES AND TITLES OF PERSONS WHO APPEARED ON FEBRUARY 8, 2007**

A▮▮▮I▮▮▮▮                    Father
V▮▮▮R▮▮                      Mother
Randi M. Rothberg, Esq.      Attorney                    Parents
Hillary S. Steuer, Esq.      Attorney                    Department of Education

*Individuals who gave testimony.

Findings of Fact and Decision                                                                                            3
Case No. 107427

## DOCUMENTS ENTERED INTO THE RECORD

| Exh. No. | Description | Party |
|---|---|---|
| 1. | Educational Progress Report, 11/11/05, 2 pp. | Department of Education |
| 2. | Observation, 11/18/05, 2 pp. | Department of Education |
| 3. | SBST/CSE Exam Completion Form, 12/15/05, 2pp. | Department of Education |
| 4. | Psychological Report, 12/15/05, 7 pp. | Department of Education |
| 5. | Social History Update, 1/6/06, 5 pp. | Department of Education |
| 6. | Speech Language Progress Report, 1/06, 5 pp. | Department of Education |
| 7. | Occupational Therapy Progress Report, 1/11/06, 5 pp. | Department of Education |
| 8. | Notice of CSE Meeting, 5/22/06, 1 p. | Department of Education |
| 9. | Educational Progress Report, 6/1/06, 5 pp. | Department of Education |
| 10. | CSE Conference Summary, 6/2/06, 2 pp. | Department of Education |
| 11. | Individualized Education Program, 6/2/06, 15 pp. | Department of Education |
| 12. | District 75 Placement Referral, 6/21/06, 3 pp. | Department of Education |
| 13. | Final Notice of Recommendation, 6/23/06, 1 p. | Department of Education |
| 14. | Letter from Parents to CSE, 7/11/06, 1 p. | Department of Education |
| 15. | Letter from Parents to CSE, 8/7/06, 1 p. | Department of Education |
| 16. | Letter from Parents to CSE, 8/9/06, 1 p. | Department of Education |

| | | |
|---|---|---|
| A. | Demand for Due Process, 10/6/06, 4 pp. | Parents |
| B. | Findings of Fact and Decision, 8/3/06, 8 pp. | Parents |
| C. | NYC DOE Individualized Education Program, 6/2/06, 15 pp. | Parents |
| D. | Final Notice of Recommendation, 6/23/06, 1 p. | Parents |
| E. | Letter from Parents to CSE Chairperson, attaching letter from Pat Murano, 8/7/06, 4 pp. | Parents |
| F. | Letter from Parents to Martin Bassis, 7/11/06, 2 pp. | Parents |
| G. | Change of Program/Service Category, 7/27/06, 1 p. | Parents |
| H. | Letter from Parents to Martin Bassis, 8/9/06, 2 pp. | Parents |
| I. | Individualized Education Plan (McCarton School), 2006-2007, 11 pp. | Parents |
| J. | Behavior Reduction Plan (McCarton School), 2006-2007, 3 pp. | Parents |
| K. | Occupational Therapy Goals (McCarton School), 2006-2007, 2 pp. | Parents |
| L. | Speech and Language Goals (McCarton School), 2006-2007, 8 pp. | Parents |
| M. | Program Data and Graphs, 2006-2007, 30 pp. | Parents |
| N. | Occupational Therapy Progress Report, 7/21/06, 6 pp. | Parents |
| O. | Speech & Language Progress Report, July 2006, 6 pp. | Parents |
| P. | Educational Progress Report, 6/1/06, 2 pp. | Parents |
| Q. | Home Therapy - weekly schedule, 2006-2007, 1 p. | Parents |
| R. | Home Program Data Sheets, 2006-2007, 10 pp. | Parents |

Findings of Fact and Decision                                                    4
Case No. 107427
_____

## DOCUMENTS ENTERED INTO THE RECORD-Continued

| Exh. No. | Description | Party |
|---|---|---|
| S. | ABA Home Program Graphs, 2006-2007, 4 pp. | Parents |
| T. | Resume: Chigusa Weekley, 2006-2007, 2 pp. | Parents |
| U. | Resume: Pat Murana, 2006-2007, 1 p. | Parents |
| V. | Resume: Alexandra Albert, 2006-2007, 1 p. | Parents |
| W. | Enrollment Contract and cancelled checks, 7/14/06, 6 pp. | Parents |
| X. | Observation by Carole A. Fiorile, Ph.D., 12/3/06, 10 pp. | Parents |
| Y. | Invoices and cancelled checks, 2006-2007, 17 pp. | Parents |
| Z. | McCarton School Information, 2006-2007, 1 p. | Parents |
| AA. | Assessment of Basic Language and Learning Skills (ABLLS), Skills Tracking System Report, July 2006, 3 pp. | Parents |
| BB. | Updated Program Data and Graphs, 2006-2007, 37 pp. | Parents |
| CC. | University of North Texas Unofficial Transcript: Pat Murano, 1/30/07, 2 pp. | Parents |
| DD. | Curriculum Vitae, Roje Ritz-Henley, undated, 1 p. | Parents |
| EE. | Teaching as Applied Behavior Analysis Records: Alexandra Alberts, 2003-2006, 6 pp. | Parents |
| IHO-1 | Interim Order on Pendency, 11/28/06, 4 pp. | Impartial Hearing Officer |

## POST-HEARING EXHIBITS

| Exh. No. | Description | Party |
|---|---|---|
| IHO-2 | Petitioners' Post-Hearing Brief, undated, 31 pp. | Impartial Hearing Officer |
| IHO-3 | New York City Department of Education Post-Hearing Memorandum of Law, 3/2/07, 31pp. | Impartial Hearing Officer |

On October 10, 2006, the parents (the "Parents") of ▮▮ L. filed a request for an impartial hearing under the Individuals with Disabilities Education Act, 20 U.S.C. section 1415(f)(1) and Section 4404(1) of the New York State Education Law (Exh. A). I was appointed as hearing officer on October 11, 2006, and the matter came on for a hearing on the issue of pendency on November 2, 2006. An Interim Order on Pendency" was issued on November 28, 2006 (Exh. IHO-1), and the matter came on for additional hearings on December 12, 2006, January 17, 2007, January 26, 2007, and February 8, 2007. Both parties submitted post-hearing memoranda of law.

Lists of the persons who appeared at the hearings and the documentary evidence submitted are appended to this Order. The compliance date for issuing a decision was extended several times.

## BACKGROUND AND POSITIONS OF THE PARTIES

▮▮ is ten years old and classified as autistic. His classification is not in dispute. The within impartial hearing proceeding pertains to the Parents' request for tuition reimbursement for the 2006-2007 school year.

The Department of Education's the Committee on Special Education ("CSE") prepared an Individualized Education Program ("IEP") for the 2006-2007 school year in which it recommended that ▮▮ be placed in a 6:1:1 specialized class in a special school. The Department of Education offered him a placement at P.226 in Manhattan. The Parents contend that the program and placement  recommended by the Committee on Special Education ("CSE") is substantively inadequate and procedurally defective. The Parents unilaterally placed ▮▮ at the McCarton School and have implemented and paid for a home-based ABA ("Applied Behavioral Analysis") program. They are seeking an order directing that the Department of Education reimburse them for the cost of the McCarton School and the home-based ABA program. They contend that these two programs are meeting ▮▮ special education needs and that both are necessary in order for him to make educational progress. They also contend that equitable factors support their claim for tuition reimbursement.[1]

---

[1] The Parents' arguments are more fully set forth in their attorney's opening statement (Tr. 12/12/06 at 27-37) and post-hearing brief (Exh. IH0-2).

The Department of Education requests that the Parents' request for tuition reimbursement be denied in its entirety. It contends that the IEP prepared by its CSE on June 2, 2006 (Parent Exh. C) recommends an appropriate program designed to ensure that ██ makes reasonable educational progress. The Department of Education rejected the Parents' contention that the IEP and recommended placement were substantively and procedurally defective. The Department of Education took the position that the placement chosen by the Parents was overly-restrictive and that the home-based ABA program was unnecessary. It also maintained that equitable factors preclude reimbursement.[2]

## TESTIMONY AND DOCUMENTARY EVIDENCE

The Department of Education's documentary evidence included progress reports and evaluations, a classroom observation, CSE forms and records, and correspondence. The Department of Education presented the testimony of the school psychologist who evaluated ██ and participated in the June 2, 2006 CSE review meeting, the principal from P.S. 226 and a teacher of a 6:1:1 class at P.S. 226.

The Parents' documentary evidence was comprised of IEPs and related services goals and objectives, service provider resumes, a classroom observation, correspondence, evaluations, assessments, and progress reports, ABA program data and graphs, the McCarton School enrollment contract, cancelled checks, information about the McCarton School, a home therapy schedule, and a prior hearing officer's decision. The Parents presented the testimony of the McCarton School staff (the Educational Director, an occupational therapist, ██ teacher, the Speech-Language Supervisor, and Home-School Coordinator), one of ██ home ABA therapists, and ██ mother.

The testimony and documentary evidence will be discussed more fully below.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A board of education may be required to pay for educational services obtained for a child by the child's parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations

---

[2] The Department of Education's arguments are more fully set forth in its attorney's opening statement (Tr. 12/12/06 at 37-43) and post-hearing memorandum of law (Exho. IH0-3.

support the parent's claim. (<u>School Committee of the Town of Burlington v. Department of Education, Massachusetts</u>, 471 U.S. 359 [1985]). The fact that the facility selected by the parents to provide special education services to the child is not approved as a school for children with disabilities by the State Education Department is not dispositive of the parents' claim for tuition reimbursement (<u>Florence County School District Four et al. v. Carter by Carter</u>, 510 U.S. 7 [1993]).The party seeking to challenge an IEP under the IDEA, which in this case is the student's parents, bears the burden of persuasion. [<u>Shaffer v. Weast</u>, 126 S.Ct. 528 at 537 (2005); <u>Cabouli v. Chappaqua Central School District</u>, 2005 WL 3500287 (SDNY, 2005)].

The IDEA mandates that school districts provide students with disabilities with a free appropriate public education ("FAPE"). A FAPE includes special education and related services designed to meet the student's unique needs, provided in conformance with a comprehensive written IEP [20 U.S.C. §§1401(d), 1412(a)]. A student has been provided with a FAPE when the school district has (a) complied with the procedural requirements set forth in the IDEA and (b) the IEP developed by its CSE through the IDEA procedures is reasonably calculated to enable the student to receive educational benefits [<u>Board of Education v. Rowley</u>, 458 U.S. 176 ( 1982)]. School districts must also appropriately evaluate the child [U.S.C. §1414(a) and (b)] and offer a program and placement in the least restrictive environment [20 U.S.C. §1412(a)]."A denial of FAPE occurs when procedural inadequacies either result in a loss of educational opportunity for the student, or seriously infringe on the parents' opportunity to participate in the IEP formulation process, or compromise the development of an appropriate IEP in a way that deprives the student of educational benefits under that IEP" [<u>See</u>, <u>Application of the board of Education of the City School District of the City of Buffalo</u>, SRO Appeal No. 06-040, citations omitted). The failure to include all mandated CSE participants may, but need not, invalidate an IEP.

The Parents have challenged the procedural and substantive validity of the June 2, 2006 IEP, as well as the proposed placement at P.S. 226.[3] It is clear from the testimony E██ mother, staff from the McCarton School, and his home ABA-provider, as well as from the documentary evidence, that E██ maladaptive and interfering behaviors, and his inattentiveness and

---

[3] For the purposes of this decision, I examine the IEP and program recommendations as of the time they were made.

distractibility, seriously impact on his ability to learn and function in classroom setting. The behaviors include tantrums, perseverative behaviors, body tensing, rigidity, and self-stimulatory vocalizations. ██ is highly distractable and has a very short attention span. He also has difficulty in transitioning from one activity to another, and in generalizing skills learned in the school environment to home and community settings.

Dr. Dewey Aleem, who testified on behalf of the Department of Education, confirmed the interfering nature of ██ behaviors and inattentiveness. ██ inattentiveness, distractibility and maladaptive behaviors interfered with Dr. Aleem's ability to administer assessments when he performed ██ triennial psychological evaluation. ██ delays in receptive and expressive language also interfered with his functioning during the evaluation. Dr. Aleem needed to modify the testing procedures and seek the assistance of ██ teacher in order to complete the evaluation.

In light of ██ behavioral issues and complex management needs, a behavior intervention plan ("BIP") is a necessary component of his educational program. The Department of Education correctly asserts that the actual BIP need not be included as part of an IEP. This is because a BIP is not a static plan that remains unchanged, to be reviewed and altered only once a year when a new IEP is developed. A BIP needs to be reviewed and modified fairly regularly, as a student's behaviors and responses to behavioral interventions change. The BIP should be based on a functional behavioral assessment ("FBA").

Even though the actual BIP need not be included in a student's IEP, the need for a BIP (as well as an FBA) must be clearly set forth in the IEP. The CSE's June 2, 2006 IEP falls short in this regard. The IEP indicates that ██ "[b]ehavior does not seriously interfere with instruction and can be addressed by the . . . special education teacher" (Parent Exh. C at 4). This is not an accurate description of ██ behavior. To the contrary, ██ maladaptive behaviors and distractibility seriously interfere with his instruction to the extent that he needs continued one-to-one support throughout the school day in order to benefit from instruction. The failure to accurately describe ██ behavior and set forth his need for a FBA and BIP renders the June 2, 2006 IEP substantively inadequate. ██ will not be able to receive the requisite "educational benefits" without appropriate behavioral strategies in place.

The IEP is deficient in several other regards. It fails to provide for parent training.
Programs for autistic children need to include provisions for parent counseling and training [8
NYCRR 200.13(d)]. "Parent counseling and training means assisting parents in understanding
the special needs of their child; providing parents with information about child development; and
helping parents to acquire the necessary skills that will allow them to support the implementation
of their child's individualized education program" [8 NYCRR § 200.1(kk)]. ██ maladaptive
behaviors and difficulties in generalization render parent training and counseling particularly
important. The lack of a parent  training component constitutes another substantive defect in the
June 2, 2006 IEP. Moreover, the CSE also inexplicably reduced ██ speech and language
services from five 60 minute sessions per week to five 30 minute sessions per week. While five
30-minute sessions comports with regulatory requirements [8 NYCRR § 200.13(a)(4)], the
reduced level of services is inadequate to meet ██ demonstrated need.

The 6:1:1 program recommended by the CSE was not appropriate. ██ had previously
been in that type of setting, and in other settings less restrictive than his present program at the
McCarton School. The less restrictive settings were not successful. Staff at the Gillen Brewer
School (a New York State "approved school") told the Parents that the school was not
appropriate for their son, and that ██ needed a more individualized instructional setting. ██
was then placed in a 6:1:1 class, with "additional shadows," at the Forum School. Forum School
staff ultimately told the Parents that ██ needed  more individualized instruction. They
suggested an ABA school which provided 1:1 instruction.

Based on the foregoing, I find that the CSE's June 2, 2006 IEP did not adequately
describe ██ needs and did not recommend an appropriate program. It was not reasonably
calculated to enable ██ to receive educational benefits. It would not provide ██ with a
FAPE.[4]

The proposed class at P.126 was not appropriate for ██. The class has a teacher, a
paraprofessional assigned to the class, and an additional paraprofessional assigned to ne of the
other students in the class. Ms. McCort (the classroom teacher) testified that the students are all

---

[4] Since I find that the IEP was substantively inadequate, I need not address the Parents'
allegations regarding procedural defects.

functioning at different levels. In addition to different levels of academic functioning, the students have different social, behavioral and emotional needs, as well as different levels of cognitive functioning. All of the students in the class have BIPs as per their IEPs. A significant amount of the instruction in the class is done at group tables. █████ does not function and learn in a group setting without 1:1 support. That support would not be available at P.126. The recommended placement does not, therefore, provide the type of support that █████ needs.

As such, I find that the Parents have met the first prong of the <u>Burlington/Carter</u> analysis. They have established that the program and placement recommended by the Department of Education's CSE were inadequate and inappropriate.

Turning to Prong 2 of the <u>Burlington/Carter</u> analysis, I note that the Parents have the burden of establishing that the placement that they chose for their child was appropriate.   In order to meet that burden, the parent must show that the services were "proper under the act." <u>Sch. Comm. of the Town of Burlington v. Dept. of Educ.</u>, 471 U.S. 359, 370 (1985), i.e. that the selected services offered an educational program which met the child's special education needs. <u>Application of a Child with a Disability</u>, Appeal No. 94-29.  The services must be "likely to produce progress, not regression."  <u>Bd. of Educ. v. Rowley</u>, 458 U.S. 176, 179 (1982).  While parents are not held as strictly to the standard of placement in the least restrictive environment ("LRE") as school districts are, the restrictiveness of the parental placement may be considered in determining whether the parents' placement is appropriate (<u>See</u> <u>M.S. v. Bd. of Educ.</u>, 231 F.3d 96 2d Cir. 2000). The private school need not employ certified special education teachers or have its own IEP for the student (<u>Florence County School District v. Carter</u>). [See <u>also</u> <u>Frank G. and Dianne G. v. Bd. of Educ. of Hyde Park</u>, 459 F.3d 356 (2d Circ. 2006].

Based on my review of the testimony and documentary evidence, I find that the placement chosen by the Parents was appropriate. In order for a program to be appropriate and meet █████ special education needs, the program must address the following deficit areas: speech and language, oral-motor, socialization, activities of daily living, fine motor and visual-perceptual deficits, attention span and focusing, the ability to sit in a group, the ability to maintain eye contact with others, etc.  It must also provided for parent training and the generalization of skills.

The combination of the McCarton School and home-based ABA program addresses ██ various and complex special education needs. The combined programs are "likely to produce progress, not regression." At the McCarton School, ██ is in a class with five other students. The class has six instructors (one of whom is the head teacher) and a speech and language pathologist. The speech and language pathologist is in the classroom throughout the school day. ██ receives continuous 1:1 support throughout the school day. He receives five hours per week of 1:1 speech and language therapy and five 45-50 minute sessions per week of occupational therapy. The home-based ABA program is designed to complement the McCarton School program, to continually reinforce appropriate behaviors and discourage maladaptive behaviors, and to assist ██ in the generalization of skills. The McCarton School home-school coordinator ensures that school-based and home-based programs are in sync with each other and that they, together, constitute an appropriate educational program.

The McCarton School also developed and implemented an individualized program that specifically targeted ██ deficit areas. It developed specific protocols to target areas of concern, together with comprehensive and measurable goals and objectives. ██ teachers and the McCarton School and home-based ABA providers took data in order to review ██ progress and, where appropriate, modified his instructional program to better suit his needs. The fact that ██ made educational progress is clear in the testimony of McCarton School staff, his mother, and his home ABA provider. It is also evident in the reports and correspondence from the school, as well as in the school records and ABA data. The witnesses reported *inter alia*, that ██ ability to sustain his attention has increased, and the time needed to complete tasks decreased. His handwriting and ability to use scissors has improved, as has his ability to work independently (for brief periods of time). With the assistance of his 1:1 instruction ██ ability to participate in group activities has improved.

██ speech and language skills have also improved, with improvements noted in receptive and expressive language, and in auditory processing skills. His vocabulary has improved, as has his spontaneous commenting. He has been able to use more descriptive language and follow more complex instructions.

The home-based ABA is a necessary component of ██ educational program. Several

witnesse testified that without the home program, the skills he masters at school would not be generalized to the home and community environments. Without the program, ⬛would experience regression and an increase in self-stimulatory and maladaptive behavior. The home-based ABA program is critical in terms of ⬛ ability to generalize Activities of Daily Living Skills from the school to the home environment. Since these skills include, independent use of the bathroom, preparing and cleaning up after a snack, dressing and undressing, etc., it is critical that ⬛ program includes a means of fostering the generalization of skills. The home-based program is therefore a necessary and reasonable component of ⬛ special education program. I also note that the McCarton School Program and home based ABA program both provide for the requisite parent training and counseling.

I reject the Department of Education's contention that program chosen by the Parents is too restrictive. The intensive 1:1 instruction provided at the McCarton School and in ⬛ home-based ABA program is not too restrictive. To the contrary, the 1:1 instruction is necessary. As noted above, ⬛ is very limited in terms of his ability to function in a group setting. Moreover, even in a group setting, he needs continuous 1:1 support. The individual support is necessary for him to even tolerate sitting, let alone attending and participating, in group activities and instruction. The 1:1 instruction provided at the McCarton School and in the home-based ABA program are therefore necessary for ⬛to make educational progress.

Based on the foregoing, I find that the placement chosen by the Parents was appropriate. As such, the Parents have met the second of the three Burlington/Carter criteria for tuition reimbursement.

Turning to Prong 3 of the Burlington/Carter analysis, I must address the Department of Education's  contention that equitable factors preclude tuition reimbursement.

None of the factors raised by the Department of Education preclude tuition reimbursement on equitable grounds. The Parents cooperated with the CSE in the evaluation and review process by making their him available for the CSE's evaluations. They shared documents and information with the CSE, and participated in the CSE review process. They also visited the CSE's recommended placement and timely advised the CSE as to the specific factors that, in their opinion, made the schools inappropriate for their son . The Parents also provided the CSE

with timely written notice of their intent to reject the CSE's proposed program and placement and to unilaterally place their son at the McCarton School and provide him with home-based ABA services, as well as their intent to seek reimbursement for the costs of the school and home-based services (Parent Exh. E).   There is nothing in the Record that would indicate that the Parents' actions (or inactions) in any way delayed or interfered with the CSE evaluation and review process. Nor is there anything in the Record which would indicate that the tuition charged by the McCarton School and the fees charged by the home-based ABA providers is excessive or unreasonable.

Based on the foregoing, I find equitable factors support the parent's request for tuition reimbursement. As such, the Parents have met the third of the three Burlington/Carter criteria for tuition reimbursement for the 2006-2007 school year.

The Parents are seeking reimbursement for the 2006-2007 school year and the summer of 2007  ( Exhs. A and IHO-2). The Department of Education challenged the tuition reimbursement for the Summer of 2007, arguing that the Parents cannot establish that █ would experience substantial regression and that any award herein should be limited to the Department of Education's "instructional calendar." The Department of Education's new school year begins on July 1. The the IEP at issue herein is due to be reviewed on June 2, 2007, and CSE has not yet had the opportunity to make program recommendations for the 2007-2008 school year (which includes the Summer of 2007). The claim for reimbursement for the Summer of 2007 is therefore premature, and I decline to consider it herein.

I will grant the Parents' request for reimbursement for the 2006-2007 school year by directing that the Department of Education promptly reimburse them for the cost of the McCarton School tuition and fees and for the cost of the home-based ABA program, for the present school year. Since the Parents' enrollment contract with the McCarton School covers the twelve month period starting on September 1, 2006, and I am granting relief only as to the period September 1, 2006 through June 30, 2007, the amount of tuition reimbursement being awarded herein must be pro-rated (the $84,000.00 for a twelve-month period is the equivalent of $7,000.00 per month) . The amount of tuition to be credited to the period September 1, 2006 through June 30, 2007 is therefore $70,000.00.

Findings of Fact and Decision                                                                 14
Case No. 107427

---

## ORDER

It is hereby ordered that:

1.     The Department of Education is directed to reimburse the Parents for the cost of

███ tuition and fees at the McCarton School for the period September 1, 2006

through June 30, 2007 in an amount not to exceed $70,000.00; payment shall be

made within 30 days of the submission of proof of payment and attendance.

2.     The Department of Education is directed to reimburse the Parents for 20 hours of

home-based ABA therapy per week for the period September 1, 2006 through

June 30, 2007, at a rate not to exceed $50.00 (fifty-dollars) per hour; payment

shall be made within 30 days of the submission of invoices and proof of payment.

3.     To the extent that invoices and proof of payment are already in the Record, they

need not be resubmitted.

Dated: April 17, 2007

Sent out April 18, 2007

MINDY G. WOLMAN, ESQ.
Impartial Hearing Officer

---

## PLEASE TAKE NOTICE

Within 35 days of the date of this decision, the parent and/or the Board of
Education of the City of New York  has a right to appeal the decision to the State Review
Officer of the New York State Education Department under Section 4404 of the Education
Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not
less than 10 days before service of a copy of the petition for review upon such school
district, and within 25 days from the date of the decision sought to be reviewed.  The
petition for review shall be served upon the school district within 35 days from the date of
the decision sought to be reviewed.  If the decision has been served by mail upon petitioner,
the date of mailing and the four days subsequent thereto shall be excluded in computing
the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek
review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision.
Directions and forms can also be found in the Office of State Review website:
www.sro.nysed.gov/appeals.htm.